No. 90865

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Appellate Court of |
| | ) | Illinois, First District, No. 97-2557 |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | There heard on Appeal from the Circuit |
| -vs- | ) | Court of Cook County, Illinois, |
| | ) | No. 87 CR 6131. |
| | ) | |
| **HENRY KACZMAREK,** | ) | Honorable |
| | ) | John Brady, |
| Defendant-Appellee. | ) | Judge Presiding. |

**CROSS-REPLY BRIEF FOR DEFENDANT-APPELLEE**

---

MICHAEL J. PELLETIER
Deputy Defender

DEBRA R. SALINGER
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLEE

EXHIBIT E

No. 90865

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) ) | Appeal from the Appellate Court of Illinois, First District, No. 97-2557 |
| Plaintiff-Appellant, | ) ) | |
| -vs- | ) ) ) | There heard on Appeal from the Circuit Court of Cook County, Illinois, No. 87 CR 6131. |
| **HENRY KACZMAREK,** | ) ) ) | Honorable John Brady, |
| Defendant-Appellee. | ) | Judge Presiding. |

**CROSS-REPLY BRIEF FOR DEFENDANT-APPELLEE**

**ARGUMENT**

II. **Defendant's Constitutional Right to a Speedy Trial Was Denied Where Three and One Half Years Elapsed Between The Reversal of Defendant's Murder Conviction and His Second Trial and Where Defendant Was Not Responsible for a Bulk of the Delay.**

The State agrees that the four factors that courts should assess in determining whether a defendant has been deprived of his constitutional right to a speedy trial are: 1) length of delay; 2) reasons for the delay; 3) defendant's assertion of his right; and 4) prejudice to defendant. *Barker v. Wingo*, 407 U.S. 514, 530-532 (1972). (St. Rep. 15-16) Contrary to the State's contention, in the instant case, each of the four factors weighs in defendant's favor.

-1-

## FACTOR #1 – LENGTH OF DELAY

The State does not dispute that the length of delay was "presumptively prejudicial." (St. Rep. 16) Thus, no further comments are necessary.

## FACTOR #2 – THE REASON FOR THE DELAY

The State acknowledges that "DNA testing was the cause for the delay in bringing defendant to retrial." (St. Rep. 18) The State, however, argues that defendant "either caused or contributed to nearly all the pretrial delay" because "defense counsels needed to know the results of the DNA tests in order to prepare the defense." (St. Rep. 17-18) The State is proposing a "chicken and egg" argument. Defendant could not be prepared without the State's DNA results, however, had the State not sought DNA testing defendant would have been prepared.

The State asserts that "defense counsel specifically stated that he did not want to set a trial date until he saw that report." (St. Rep. 19) Counsel in fact indicated that since the State was doing additional testing, he had to wait for the results of the State's tests. (C. 259) Specifically, counsel stated that he had been told by the assistant state's attorney that Serologist Fish was "supposed to be doing additional test[s]. She is doing additional blood training [sic]; she didn't have a report, so I don't think it is set for trial until I get a report." (C. 259) Counsel, thus, explained that he would not be prepared for trial until he saw the State's evidence which included the serology report.

The State is essentially asking defendant to choose between two constitutional rights: defendant's constitutional right to discovery and to a speedy trial. A defendant cannot be forced to elect between his right to a speedy trial and his right to pretrial discovery. *People v. Nunnery*, 54 Ill. 2d 372, 297 N.E.2d 129 (1973). In *Nunnery*, in discussing defendant's right to a speedy

trial, this Court affirmed that a defendant is "clearly entitled to discovery." *Nunnery*, 54 Ill. 2d at 377. *Nunnery* stands for the proposition that a defendant cannot be forced to elect between his right to a speedy trial and his right to pretrial discovery. *See also People v. Moore*, 26 Ill. App. 3d 282, 325 N.E.2d 33 (4th Dist. 1975) (where court found that defendant did not occasion delay when he agreed to a date for preliminary hearing because defendant had not sought a continuance, but merely requested the hearing in which he was constitutionally entitled).

The State perpetrates the misconception that the State's DNA tests would have been "more prompt had the defense complied with the trial court's order to turn over results of the DNA tests that were requested by defendant from his first trial." (St. Rep. 18) The State claims that in August of 1995, "the prosecution finally received the missing discovery relating to defendant's DNA testing from his first trial." (St. Rep. 20) As the record bears out, the State had those reports since 1989. (S.R. III 34)[1] Conspicuously absent from the State's reply is any reference to the November 9, 1989 date. The State does not mention what it identifies as Vol. 2, S.R., containing the November, 1989 transcript, in its response.

On November 9, 1989, in response to defendant's previous request for appointment of a forensic serologist, the prosecutor admitted obtaining the results from Cellmark. (S.R. III 34-35) The prosecutor stated:

---

[1] In his brief, defendant referred to the three supplemental volumes in the same manner as in the appellate court and as indicated on the front cover of the volumes. The State reordered the designations in its brief.

| Description | Defendant's designation | State's designation |
|---|---|---|
| Numerous pre-trial dates | S.R. | Vol. 3, S.R. |
| Def.'s motion to dismiss | S.R. II | Vol. 1, S.R. |
| November 9, 1989 proceeding | S.R. III | Vol. 2, S.R. |

> [PROSECUTOR]: [W]e would just ask that the record note that the defendant did have this evidence to Cell Mar [sic] for DNA testing; that initially the defendant initially refused to turn over any result to the People; that upon the court issuing an order, Cell Mar did turn over those results to us, which indicated that five bands matched but they could not be conclusive because –
>
> [DEFENSE COUNSEL]: Object to that, your Honor. That is some testimony he is trying to present now.
>
> [PROSECUTOR]: There is information that came to me from Cell Mar [sic] which was withheld by [defense counsel]. (S.R. III 34-35)

In accord, the common-law record from defendant's first trial contains the April, 1989 court order compelling Cellmark to turn over results to the State. (1989 Trial, S.C. 119-120)

In response to the defendant's contention that the State had the defense DNA reports since the first trial, the State concedes that there was "prior disclosure of the DNA testing at the first trial." (St. Rep. 23) The State, however, avers that "it was imperative to the scientists to see written results as opposed to verbal claims made by defense attorneys." (St. Rep. 23) The State's claim that defendant only made verbal claims and had not tendered written results is not only without support but is rebutted by the record. (S.R. III 34-35)

The State argues that "had the DNA results indicated that the blood found on defendant's clothing was not that of Millie Nielsen, an acquittal was practically guaranteed." (St. Rep. 18) Defendant, however, already knew the ABO blood tests results from the first trial. Serologist Fish testified that decedent had type "A" blood with "BA" enzymes. (1989 trial, S. R. 867-872) Fish had testified that the percentage of the population having the same blood type and enzymes as decedent was "eight in a thousand people." (1989 trial, S.R. 913) The blood-typing evidence from the first trial, without DNA testing, was already to defendant's detriment. Having more sophisticated blood examination, such as DNA testing, could not benefit defendant.

Although defendant had already offered an explanation as to how decedent's blood may

have gotten on his clothes when he picked up the blood-stained bag in the yard, the State contends that it was to defendant's advantage to wait and see what the DNA tests proved on retrial. (St. Rep. 23) The State's two-fold response is without basis. The State first asserts that although defendant provided an explanation at the first trial as to how he could have gotten decedent's blood on his clothing, defendant's explanation had no relevance to preparing for retrial because the State had to prove defendant guilty beyond a reasonable doubt. (St. Rep. 23) By claiming that "DNA evidence would go a long way in establishing that burden," the State exposes itself as the reason for the DNA testing and the true cause of the delay.

Second, the State contends that the prosecution needed the DNA evidence because the prosecution did not know whether defendant would be testifying at retrial. Whether defendant testified or not would not impact on the State's preparation or its duty to bring defendant to trial in a timely fashion. If defendant were going to testify at retrial, the State would already know the substance of defendant's testimony from the first trial and would be able to impeach him if there were any inconsistencies. If defendant did not testify, then the State's burden would be reduced as it would not have to counter defendant's explanation concerning finding the bag in the yard. In reality, the only party who would be advantaged by the DNA testing was the State.

The State cites to the fact that defendant had six attorneys while the case languished on remand. (St. Rep. 18-21) As cited in defendant's brief, a number of the attorneys would have been ready for trial, but for the State not having completed discovery with the DNA and blood splatter tests. (Def. Br. 47) Notably, the State does not address *People v. Battles,* 311 Ill. App. 3d 911, 724 N.E.2d 997 (5th Dist. 2000), where the court observed that the "actual [DNA] testing took less than 22 days." (Def. Br. 47)

In arguing that it was to defendant's advantage to wait for the State's DNA testing, the

State declares that "the instant case is strikingly similar to *Barker*." (St. Rep. 22) In fact, *Barker* highlights why there was a constitutional speedy trial violation in the instant case. In *Barker*, defendant did not want to be tried. Defendant, in *Barker*, was charged along with a co-defendant. The evidence against the co-defendant was not as strong as established by the reversals and hung juries obtained by the co-defendant. *Barker*, 407 U.S. 535. The defendant was gambling on his co-defendant's acquittal. The United States Supreme Court stated that defendant "undoubtedly thought" that if co-defendant were acquitted, "he [Barker] would never be tried." The *Barker* Court observed that defendant "definitely did not want to be tried" and that "counsel conceded as much at oral argument." *Barker*, 407 U.S. at 535. In contrast to *Barker* where defendant had a tactical reason for delaying trial, here, there was no advantage to defendant's waiting for DNA testing and blood splatter analysis by the State. (Def. Br. 46)

The State argues that of the 47 times the case was called prior to trial, "there is not one 'motion state' date in the record." (St. Rep. 21) "Motion State" is only relevant for statutory speedy trial analysis. (Def. Br. 47) Here, the entire reason the cause was delayed was due to the State's seeking additional evidence against defendant.

### FACTOR #3 – Defendant's Assertion of His Right

The State concedes that defendant had asserted his right to a speedy trial. (St. Rep. 29) The State, however argues that it is "abundantly clear that none of defendant's six attorneys were ready to proceed to trial when defendant was making those assertions." (St. Rep. 29) Relying on *People v. Mayo*, 198 Ill. 2d 530, 764 N.E.2d 525 (2002), the State asserts that "this is a crucial issue which defendant continues to ignore." (St. Rep. 29) *Mayo* is inapposite as defendant in *Mayo* alleged a statutory speedy trial violation; not a constitutional speedy trial violation.

Further, the issue in *Mayo* concerned whether defendant wished to represent himself or be represented by an attorney. Here, at differing times, both defendant *pro se*, and defense counsel, asserted defendant's right to a speedy trial. (C. 240, 265, 287; C. 199-291)

The State cites to the Appellate Court's statement that defendant was "bound" by his attorney's conduct and that defendant "never sought discharge of his attorneys to pursue his speedy-trial claims on his own." (St. Rep. 29) In fact, defendant asked the court to appoint other counsel. (C. 240, 265, 287) Although the Appellate Court determined that defendant was bound by his counsel's conduct, defendant had the constitutional right to demand a timely trial. The circuit court would not appoint other counsel and forced defendant to present his own *pro se* motions for discharge. (C. 279-281, 284-286) The trial judge never gave defendant *Faretta* admonishments in order to proceed *pro se*. Thus, short of discharging counsel altogether, defendant did all he could to assert his right to a speedy trial.

The State again relies on the tautological argument that defendant's attorneys "needed DNA analysis to be completed and the final results of experts to be rendered before they could be prepared for trial." (St. Rep. 30) Had the State not sought additional discovery which delayed defendant's trial, the "series of attorneys" would have been ready for trial. In contrast to *Barker v. Wingo* where the United States Supreme Court found that there was no assertion of the right to a speedy trial since the defendant in *Barker* was gambling on his co-defendant's acquittal, here defendant asserted his right to a speedy trial.

**FACTOR #4 – Prejudice to Defendant**

In *Barker*, the Court found that the prejudice was minimal as defendant had been released on bond for the majority of the time pending trial. In contrast to *Barker*, defendant in the instant

-7-

case was incarcerated for the majority of the 3 ½ years from reversal to retrial.[2] The State cites to *People v. Wills*, 153 Ill. App. 3d 328, 505 N.E.2d 754 (2nd Dist. 1987), in an effort to downplay the prejudice by contending that anxiety is present "to some extent" in every case. (St. Rep. 31) In *Wills*, however, the court found no prejudice because defendant was "free on bond during the entire proceeding." *Wills*, 153 Ill. App. 3d at 337. Likewise, the State's reliance on *People v. Jackson*, 162 Ill. App. 3d 476, 515 N.E.2d 390 (4th Dist. 1987), and the need to show an "inordinate amount of anxiety," is misplaced. (St. Rep. 31) In *Jackson*, the court noted that "defendant's liberty was already impaired because of the separate offense for which he was incarcerated." *Jackson*, 162 Ill. App. 3d at 480.

Although the State contends that "anxiety is not tantamount to prejudice," the *Barker* Court specifically declared that prejudice should be assessed in the light of the interest of defendants which the speedy trial right was designed to protect. *Barker*, 407 U.S. at 532. Among those interests, the *Barker* Court specifically included the anxiety and concerns of the defendant. *Barker*, 407 U.S. at 532. Here, the judge explicitly noted for the record that defendant was anxious to be tried. (S.R. 68, 113, 121) Specifically, the judge stated that defendant was "anxious to go to trial" (S.R. 113); that he knew "that you're anxious to get this case off of your call. I think Mr. Kaczmarek is too" (S.R. 121); and that "Mr. Kazcmarek I think is probably [ ] anxious for trial." (S.R. 68) (*see* also defendant's motion for discharge, C. 214)

The State asserts that the delay never impaired the defense and that defendant "had as much of a stake in the DNA results as the prosecution." (St. Rep. 31) The State's position is

---

[2] Excluding the approximate two-month period, from the March 31, 1993 reversal to the June 3, 1993 denial of the State's petition for leave to appeal, 42 months remain, or approximately 3 ½ years, between reversal and the November, 1996 retrial. (*See* St. Rep. 17)

without support. Delay to obtain DNA results worked to the prosecution's advantage, not defendant's. Defendant had already explained at his first trial how he could have come to have gotten decedent's blood on his clothing by picking up a bag found in the yard and carrying it to trunk of his car. The State's response that "all six defense attorneys acquiesced in the delay because the defense theory would become stronger if the tests revealed that the blood was not the victim's" obfuscates the fact that the State needed the delay to try to accumulate additional evidence against defendant. (St. Rep. 32)

The State concedes that "defendant himself did not want to wait for the blood results," but argues that defendant merely did not "understand its vital role." (St. Rep. 32) There was no question that defendant handled the decedent's belongings. At defendant's first trial, defendant admitted to finding the bag in the yard and then selling items contained within it to Bill Brown. (1989 Trial, S.R. 1153, 1185, 1164) Defendant explained how decedent's blood could have gotten on him without his being in decedent's apartment. Contrary to the State's theory, whether the blood on defendant was the decedent's or not, an acquittal was not assured. In closing argument, counsel posited that defendant had "picked up a bag that had objects in it, all the property that was inside that bag was the property of Millie Nielsen and had been taken from her home by Ron Larry." (R. L94) Delaying the trial to obtain DNA results worked to the prosecutions's advantage, not defendant's.

In the instant case, Mr. Kaczmarek's constitutional right to a speedy trial was denied where approximately 3 ½ years elapsed between reversal of defendant's murder conviction and his second trial due to delay caused by the State. When all four *Barker* factors are weighed, it becomes apparent that defendant's constitutional right to a speedy trial was denied. This Court should reverse Henry Kaczmarek's murder conviction.

## CONCLUSION

For the foregoing reasons, Henry Kaczmarek, Defendant-Appellee, respectfully requests that this Court reverse his murder conviction and order his release. Alternatively, defendant asks that his sentence be reduced to a sentence within the non-extended range of 20 to 40 years.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

DEBRA R. SALINGER
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472

COUNSEL FOR DEFENDANT-APPELLEE