No. 1-04-2401

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

RECEIVED
CRIMINAL APPEALS

OCT 2 ə 2005

309 RICHARD J. DALEY CENTER
RICHARD A. DEVINE
STATE'S ATTORNEY'S OFFICE

PEOPLE OF THE STATE OF ILLINOIS,

        Respondent-Appellee,

-vs-

HENRY KACZMAREK,

        Petitioner-Appellant.

Appeal from the Circuit Court of Cook County, Illinois
Criminal Division
The Honorable Lon William Shultz, Judge Presiding.

PRO SE SUPPLEMENTAL BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT

ORAL ARGUMENT REQUESTED

EXHIBIT H

No. 1-04-2401

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| -vs- | ) | No. 87 CR 6131 |
| | ) | |
| HENRY KACZMAREK, | ) | Honorable |
| | ) | Lon William Shultz, |
| Petitioner-Appellant. | ) | Presiding Judge. |

---

**PRO SE SUPPLEMENTAL BRIEF AND ARGUMENT FOR DEFENDANT-APPELLANT**

**POINTS AND AUTHORITIES**

I.

**I.**

**THE STATES ATTORNEY OFFICE/AND OR ONE OF THEIR AGENTS COMMITTED
PROSECUTORIAL MISCONDUCT BY WILLINGFULLY WITHHOLDING KEY
EXCULPATORY EVIDENCE IN VIOLATION OF SUPREME COURT RULES 412 (c)
IN DOING SO DENYING DEFENDANT HIS BASIC CONSTITUTIONAL
GUARANTEES UNDER DUE PROCESS AND FUNDAMENTAL FAIRNESS OF LAW**

**Brady v. Maryland**, 373 U.S. 83 (1963)............................ p.3, 4

**Kyles v. Whitley**, 514 U.S. 419 (1995)............................ p.3

**United States v. Bagley**, 473 U.S. 667, 676..................... p.3

**United States v. Agurs**, 96 S.Ct. 2392 (1976)................... p.3

**People v. Washington**, 171 Ill. 2d 475, 489-90
             665 N.E. 2d 1330 (1996)................................ p.5

**People v. Burrows**, 172 Ill. 2d 169, 180
         665 N.E. 2d 1319 (1996)..............................p.5

**People v. Olinger**, 176 Ill. 2d 326, 345, 223 Ill. Dec
         588, 680 N.E. 2d 321 (1997)........................p.6

**United States v. Marrero**, 516 F.2d 12 (1975)................p.6

## PRO SE SUPPLEMENTAL ISSUE PRESENTED FOR REVIEW

THE STATES ATTORNEY OFFICE/AND OR ONE OF THEIR AGENTS COMMITTED
PROSECUTORIAL MISCONDUCT BY WILLINGFULLY WITHHOLDING KEY
EXCULPATORY EVIDENCE IN VIOLATION OF SUPREME COURT RULES 412 (c)
IN DOING SO DENYING PETITIONER HIS BASIC CONSTITUTIONAL
GUARANTEES UNDER DUE PROCESS AND FUNDAMENTAL FAIRNESS OF LAW

## PRO SE SUPPLEMENTAL ARGUMENT

I.   **THE STATES ATTORNEY OFFICE/AND OR ONE OF THEIR AGENTS COMMITTED PROSECUTORIAL MISCONDUCT BY WILLINGFULLY WITHHOLDING KEY EXCULPATORY EVIDENCE IN VIOLATION OF SUPREME COURT RULES 412 (c) IN DOING SO DENYING DEFENDANT HIS BASIC CONSTITUTIONAL GUARANTEES UNDER DUE PROCESS AND FUNDAMENTAL FAIRNESS OF LAW**

Henry Kaczmarek was convicted of first degree murder based on the testimony of state criminalist Pamela Fish who testified as a forensic expert in the field of serology.

According to her testimony she and her lab conducted numerous test on blood droplets that were recovered from defendants clothing, while giving testimony Ms. Fish testified that a match was found and consistent to that of the decedent, she further goes on to explain the process in which her conclusion were reached.

It was later discovered that the results were in fact erroneous and misleading (See appendix -B) because the fact of the matter was that when defendant finally received the actual results results from the Chicago crime lab which was some 6 years later from the time the Court had conducted a hearing ordering that the state release all DNA evidence in connection to the instant case.

Defendant assert that because the state failed to disclose these documents they denied him a right to a fair trial where if these documents would have been disclosed the defendants chance of acquittal were highly likely because the testimony in which the state elicted from its expert witness could have easily been refuted and discredited by the fact that her entire testimony in defendants 1st. and 2nd. trial was in fact a lie where the

2.

official results essentially states that blood standards were taken and identified for comparisons and DNA was isolated and amplified by polymerase chain reaction, the results were inconclusive and unequivocally no matches were made. Defendant argues that by the failure of the state to disclose these results as a matter of a rule to discovery it violated his 14th. Amendment right of the United State Constitutional right where it is well known that the due process clause of the Fourteenth Amendment requires the prosecution to disclose material evidence that is favorable to the accused. **Brady v. Maryland**, 373 U.S. 83, 87 (1963); **Kyles v. Whitley**, 514 U.S. 419, 432-33 (1995).

The prosecutions duty to disclose emcopasses impeachment evidence **United States v. Bagley**, 473 U.S. 667, 676 (1985). Such evidence is considered "evidence favorable to the accused" because, if disclosed and used effectively, it may make the difference between conviction and acquittal **Bagley**, 473 U.S. at 676 citing **Brady**, 373 U.S. at 87. also **United States v. Agurs**, cite as 96 S.Ct. 2392 (1976) where it states:

> there are situations in which evidence
> is obviously of such substantial
> value to the defense that the prosecution
> disclose it to the defense even without
> spefic request U.S.C. A. Const. Amend.
> 5, 14.

Defendant realleges that as a rule to discovery the state clearly abused their office by failing to disclose this information it clearly denied him a basic guarantee thats afforded to every citizen,

the disclosure rules dictate that as a matter of fairness each
criminal defendant shall be entitled to a fair and impartial trial
and all evidence shall be given in the hopes that fairness could
be reached and according to Supreme Court Rules 412 (c) it states:

> any material or information within
> its possession or control which
> tends to negate the guilt of
> the accused as to the offense
> charged or would tend to reduce
> his punishment therefor

> (i)s included to comply with
> the constitution requirements
> that the prosecution disclose,
> ***where the evidence is material
> to guilt or the punishment "
> **Brady v. Maryland**, 373 U.S. 83
> at p. 87, 83, S.Ct. 1194at 1196¬
> 97 (1963).

Defendant ascertain that as a rule of discovery pursuant
to Supreme Court Rules 412 (c) the state failed to meet their
burden where they continued to withhold evidence within its process
that could have very well proved the innocence of the defendant.

First by the failing to disclose the results of the initial
testing by stating " that the amount recovered was not sufficient
enough to be tested and what was recovered was to degraded to
make a comparison ".  Secondly failing to disclose evidence again
in the May 9, 1995 hearing conducted some 8 years later during
a pre-trial hearing to defendants second trial, where the trial
judge ordered the then assistant states attorney to furnish whatever
results he had concerning the DNA evidence and/or any results

4.

to the instanter, the ackownledged that the results were middle way through finishing and their office would be providing the results at the closing of that day (see appendix for exhibit marked--A).

It is defendants contention that if the rule of discovery had been followed the states case could not have held "muster" where the jury would have been placed in a position to review the facts and all relevant evidence related to trhe case not partial pieces that the state chose to display ultimately off-setting the balance of fairness denying defendants right to a fair and impartial trial trial.

The Illinois Supreme Court has held that a free-standing claim of innocence based on newly-discovered evidence is a constitutional issue under the due process clause of the Illinois Constitution and is therefore cognizable under the Post-Conviction Hearing Act. **People v. Washington**, 171 Ill. 2d 475, 489-90, 665 N.E.2d 1330 (1996); Ill. Const., art. I, sec. 2. Newly discovered evidence is evidence which was unavailable at trial and which could not have been discovered sooner through due diligence.

**People v. Burrows**, 172 Ill. 2d 169, 180, 665 N.E. 2d 1319 (1996). In order to obtain relief when raising a claim of actual innocence, the supporting evidence must be material, non-cumulative, and of such a conclusive character that it would "probably change the result on retrial." **Washington**, 171 Ill. 2d at 489.

In conclusion, defendant has made a substantial showing of actual innocence, where if the state would have disclosed this key evidence it could have reasonably affected the jury's verdict, instead of doing so they presented and solicited false testimony from a so called expert witness whose credentials are now under attack and considered to be suspect, even if the prosecution did not solicit false testimony, but allowed it to go uncorrected when it appeared due process is violated. **People v. Olinger**, 176 Ill. 2d 326, 345, 223 Ill. Dec. 588, 680 N.E. 2d 321 (1997); also **United States v. Marrero**, 516 F.2d 12 (1975)(where the state is obligated to protect the rights of the defendant as vigorously as the rights of the victim in a criminal prosecution and the defendant enjoys the rights to due process and equal protection of law, where a conviction cannot stand where the prosecution knowingly use false and misleading testimony.

Unlike the first and second trial where key evidence was not available  defendant argues that the trial court should have not dismissed his post-conviction petition without at least an evidentiary hearing to determine the relevance of the evidence presented.

6.

## CONCLUSION

For the foregoing reasons, Henry Kaczmarek, Petitioner-Appellant, pro se, respectfully requests that this Honorable Court reverse the dismissal of his petition and remand for further proceedings under the Post-Conviction Hearing Act.

Respectfully Sumitted,

*Henry Kaczmarek*

## CERTIFICATE OF VERIFICATION

Under the penalty of perjury as provided by law pursuant to section 5/1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in these documents are both true and correct.

*Henry Kaczmarek*

Henry Kaczmarek
Register No. N-95790
P.O. Box 711
Menard, Illinois 62259

## <u>APPENDIX TO THE BRIEF</u>

Report of Proceeding....................................... A

Laboratory Report......................................... B

```
STATE OF ILLINOIS    )
                     )  SS:
COUNTY OF C O O K    )
```

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT-CRIMINAL DIVISION

```
THE PEOPLE OF THE     )
STATE OF ILLINOIS,    )
                      )    Criminal
         Plaintiff,   )
                      )    No. 87-6131
    vs.               )
                      )    Charge:  Murder, etc.
HENRY KACZMAREK,      )
                      )
         Defendant.   )
```

REPORT OF PROCEEDINGS had of the hearing

in the above entitled cause, before the Honorable

JOHN D. BRADY, Judge of said court, on the 9th

day of May, 1995.

APPEARANCES:

HONORABLE JACK O'MALLEY,
State's Attorney of Cook County, by:
MR. NEAL GOODFRIEND,
Assistant State's Attorney,
for the People of the State of Illinois;

MS. RITA A. FRY,
Public Defender of Cook County, by:
MR. PYIUSH CHANDRA,
Assistant Public Defender,
for the defendant.

J. D. Williams, CSR
Official Court Reporter
2650 S. California Ave.-4C02
Chicago, Illinois  60608

1       THE CLERK:  People of the State versus

2   Henry Kaczmarek.

3       THE COURT:  This is the matter of Mr. Kaczmarek.

4       THE DEFENDANT:  Pardon me?

5       THE COURT:  I just said this is the case that was

6   called.

7       MR. GOODFRIEND:  Judge, years ago the defense had

8   been ordered to turn over certain results of D.N.A.

9   testing done by their expert and I renew that motion

10  because I hadn't gotten the results, I'm still waiting

11  for certain documents that have been tendered by

12  Selmar to the defense, I think it is Selmar, and we

13  were trying to finish up our D.N.A. testing but I'm

14  waiting for these results, I haven't received them.  I

15  know the defense has them.

16      MR. CHANDRA:  Judge, what we received years ago

17  when Mr. Cooley originally represented Mr. Kaczmarek

18  he had ordered some testing done; he never requested

19  any findings be produced by the agency that did the

20  testing so there are no findings.  All I have now are

21  notes from them that are not conclusive finding.

22          We are happy to comply with any order,

23  however when I spoke with Mr. -- with the state's

24  attorney previously he indicated to me that his

1    results that are his results of the Chicago crime labs

2    analyses of the D.N.A. cannot be made available to us

3    until they see what we've got.

4         Since the burden of proof is on them I

5    believe they have to reach their own conclusions and

6    they cannot use our evidence to help reach conclusions

7    for their case.

8         What we would ask is that they simply provide

9    us with their findings at this point and we'll be

10   happy to provide them with the notes that we have but

11   we don't believe that we have to supply them with our

12   notes to help them reach their conclusions.

13   MR. GOODFRIEND:  This is ridiculous, Judge.

14   Number one is back in 1987 we had serology done at the

15   Chicago Police Department crime lab and as soon as our

16   test results were done we tendered them to the defense

17   as required by the rules of discovery.  The Chicago

18   Police Department was not doing D.N.A. at the time.

19        We supplied samples to Mr. Cooley and he sent

20   them to the other lab in their sample supply by the

21   Chicago Police Department and then when he got his

22   results back he would not give them to us.  Judge

23   Getty at that time ordered him to do so.  Then he

24   eventually we got an answer over the phone, we never

1  got any documents.

2  So now that the case has come back for

3  retrial and the Chicago Police Department has started

4  some of their D.N.A. testing it would be fruitless for

5  them to retest possibly something that has already

6  been tested by some other laboratory they might not

7  want to go into that. But why should we wait for

8  their results, we have been waiting for their results

9  for six years, I mean it is time that they tendered

10 them to me. If they want to cross examine Pam Fish

11 and say that she only came up with the results after

12 looking at somebody else's results that is up to

13 cross-examination.

14      THE COURT:  You tendered the defense all the

15 results from the Chicago Police Department?

16      MR. GOODFRIEND:  They are in the middle of their

17 D.N.A. testing.

18      THE COURT:  Have you tendered all of the results

19 from your testing?

20      MR. CHANDRA:  As I said --

21      THE COURT:  According to the order of Judge Getty.

22      MR. CHANDRA:  There were no results made.

23      MR. GOODFRIEND:  He's got notes. He's got notes.

24 I haven't seen the notes.

1      THE COURT:  Tender the notes.

2      MR. GOODFRIEND:  Thank you, Judge.

3      MR. CHANDRA:  Judge, I would ask to tender them at

4  the same time they tender the results of their

5  examinations of the D.N.A.  We should not be --

6      THE COURT:  I am not going to play this game.

7  Tender the notes, period.  When your testing is done

8  tender the results, period.  Okay.  Now, do we

9  understand each other?

10      MR. GOODFRIEND:  Absolutely, Judge.

11      THE COURT:  When they're done I want them tendered

12  to both sides.  This is not going to be any of this

13  piecemeal discovery, I want it done.

14      MR. GOODFRIEND:  Okay.

15      Mr. Chandra, when can I have your notes?  Do

16  you have them today?

17      MR. CHANDRA:  Yeah, I can get them to you today.

18      THE COURT:  I mean let's get it finished, let's

19  not play games, okay.

20      What date do we need on this?

21      MR. CHANDRA:  Judge, we would ask also as to a

22  different matter, there are a number of photographs

23  apparently taken in this case and we would like an

24  opportunity to review the photographs and all

1    negatives that were taken by the Chicago Police

2    Department in this case.

3        MR. GOODFRIEND:  No problem.

4        THE COURT:  Okay, get them to him.  Maybe you can

5    get him a set of photographs.

6        MR. GOODFRIEND:  Sure, Judge.

7        THE COURT:  That shouldn't be too difficult to do.

8        MR. GOODFRIEND:  No.

9        MR. CHANDRA:  We would like to review the

10   negatives, Judge.

11       THE COURT:  I'm sure you can review the negatives

12   at the Chicago Police Department, I can't imagine them

13   turning any negatives over to anybody.

14       MR. GOODFRIEND:  They won't turn them over to me.

15       THE COURT:  I didn't think they would that's why I

16   told him he had to go down to do it.

17       MR. GOODFRIEND:  If we could have a status date of

18   May the 22nd I'll know on that date when the Chicago

19   Police Department --

20       THE COURT:  How is that for you?

21       MR. CHANDRA:  May the 22nd?

22       MR. GOODFRIEND:  Yes.  Or even next Monday May the

23   15th I'll know, well actually the week of the 22nd

24   sometime then I should know.

1    MR. CHANDRA:  May the 22nd is fine.

2    THE COURT:  May the 22nd, okay.

3                    (The case was continued to

4                    May 22, 1995.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    STATE OF ILLINOIS  )
                        )  SS:
2    COUNTY OF C O O K  )

3

4

5                    I, Jewel Williams, an  Official

6    Court Reporter for the Circuit Court of Cook County,

7    County Department-Criminal Division, do hereby certify

8    that I reported in shorthand the proceedings had in

9    the above entitled cause, that I thereafter caused the

10   foregoing to be transcribed into typewriting, which I

11   hereby certify to be a true and accurate transcript of

12   the proceedings had before the Honorable

13   JOHN D. BRADY, Judge of said court.

14

15

16                    _____

17                         Official Court Reporter

18

19

20

21

22

23

24

M-9

EXHIBIT
A
pg.1

**CHICAGO POLICE DEPARTMENT**
**CRIME LABORATORY DIVISION**
1121 SOUTH STATE STREET, CHICAGO, ILLINOIS 60605

## LABORATORY REPORT

J170913
Millie Nielsen
HOMICIDE
SUPPLEMENTARY REPORT I
(see original report dated 7 May 1987)

22 October 1995

The evidence listed below was subjected to DNA analysis.

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| K-1 | Blood standard: Millie Nielsen |
| Q-1 | Blood standard: Henry Kaczmarek |

The evidence listed below was received from Investigator J. Lewandowski on 12 May 1994 for DNA analysis.

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| Q-2 | Blue jeans identified as the property of Henry Kaczmarek. |
| Q-3 | Quilted jacket identified as the property of Henry Kaczmarek. |

FINDINGS

| | |
|---------|-------------|
| K-1 | Submitted as a standard for comparison. DNA isolated. |
| Q-1 | Submitted as a standard for comparison. DNA isolated. |
| Q-2 | Blood identified. DNA isolated. |
| Q-3 | Blood identified. DNA isolated. |

RESULTS

DNA isolated from each exhibit was amplified by the Polymerase Chain Reaction (PCR) at the following loci: HLA DQ-alpha, LDLR, GYPA, HBGG, D7S8 and GC.

No DNA profile was obtained from the blue jeans. Inconclusive results were obtained from the jacket.

EXHIBIT
B
Pg.2

CHICAGO POLICE DEPARTMENT
CRIME LABORATORY DIVISION

1121 SOUTH STATE STREET, CHICAGO, ILLINOIS 60605

# LABORATORY REPORT

J170913
Millie Nielsen
Homicide
page 2

CONCLUSIONS
No DNA comparisons were made.

EVIDENCE DISPOSITION
DNA evidence will remain in the laboratory.

*Pamela Fish*
Pamela Fish
Supervising Criminalist

## AFFIDAVIT

I, Henry Kaczmarek, deposes and state that as to the documents herein, is the defendant in the above entitled cause; that I have read the aforegoing documents, and by my signature I state that the statements contained are true in substance and in fact.

Respectfully Submitted,

*Henry Kaczmarek*

Henry Kaczmarek

## CERTIFICATE OF VERIFICATION

Under the penalty of perjury as provided by law pursuant to section 5/1-109 of the Code of Civil procedure, the undersigned certifies that the statements set forth in these documents are both true and correct.

*Henry Kaczmarek*

Henry Kaczmarek
Register No. N-95790
P.O. Box 711
Menard, Illinois 66259