No. 1-04-2401

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 87 CR 6131. |
| | ) | |
| **HENRY KACZMAREK,** | ) | Honorable |
| | ) | Lon William Shultz, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**REPLY BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT**

MICHAEL J. PELLETIER
Deputy Defender

SARAH CURRY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

RECEIVED
CRIMINAL APPEALS
JUL 10 2006
RICHARD J. DALEY CENTER
RICHARD A. DEVINE
STATE'S ATTORNEY'S OFFICE

RECEIVED
CRIMINAL APPEALS
JUL 10 2006
309 RICHARD J. DALEY CENTER
RICHARD A. DEVINE
STATE'S ATTORNEY'S OFFICE

EXHIBIT K

No. 1-04-2401

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Respondent-Appellee, | ) | |
| | ) | |
| -vs- | ) | No. 87 CR 6131. |
| | ) | |
| HENRY KACZMAREK, | ) | Honorable |
| | ) | Lon William Shultz, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**REPLY BRIEF AND ARGUMENT FOR PETITIONER-APPELLANT**

I. **HENRY KACZMAREK'S *PRO SE* POST-CONVICTION PETITION PRESENTED THE GIST OF A CONSTITUTIONAL CLAIM THAT THE STATE PRESENTED THE PERJURED TESTIMONY OF CRIMINALIST PAMELA FISH IN ORDER TO SECURE HIS CONVICTION FOR FIRST DEGREE MURDER. KACZMAREK'S PETITION THEREBY WARRANTS FURTHER PROCEEDINGS UNDER THE POST-CONVICTION HEARING ACT.**

Initially, the State argues that Henry Kaczmarek has waived this argument because he did not make perjury claims against Pamela Fish at his first or second trial or in his first or second direct appeal. (St. Br. 28)  However, evidence that Fish was suspected of giving false testimony in several other cases did not come out until after Kaczmarek's trials were completed and direct appeals were filed. Thus, Kaczmarek could not have raised the issue of Fish's perjured

-1-

testimony until this post-conviction petition.

Henry Kaczmarek's post-conviction petition was summarily dismissed at the first stage of the post-conviction proceedings. (R. B11) However, throughout its brief, the State relies on and cites to cases involving post-conviction petitions that were dismissed at the second stage of post-conviction proceedings. *See People v. Coleman*, 183 Ill.2d 366, 701 N.E.2d 1063 (1988), *People v. LeCompte*, 38 Ill.App.3d 513, 347 N.E.2d 797 (5th Dist. 1976), *People v. Graham*, 48 Ill.App.3d 689, 363 N.E.2d 124 (5th Dist. 1977), *People v. Orange*, 168 Ill.2d 138, 659 N.E.2d 935 (1995), *People v. Gendron*, 41 Ill.2d 518, 244 N.E.2d 149 (1969), *People v. Hobley*, 159 Ill.2d 272, 637 N.E.2d 992 (1994). (St. Br. 31, 32, 33, 34) In each of these cases, the petitioner was required to make a substantial showing of a violation of a constitutional right in order to obtain a hearing on his post-conviction petition. *Coleman*, 183 Ill.2d at 380. In this case, Kaczmarek's petition needed only to state the gist of a constitutional claim in order to survive summary dismissal. *People v. Edwards*, 197 Ill.2d 239, 757 N.E.2d 442 (2001). Therefore, this Court should not consider the cases relied on by the State in analyzing Kaczmarek's claim.

The State argues that to support his claim that the State used perjury to obtain his conviction, Kaczmarek needed to identify with reasonable certainty the sources, character and availability of the alleged evidence supporting his allegation in his petition or accompanying affidavit. *See LeCompte, Orange, Gendron*. (St. Br. 32) However, this standard applies to cases involving second stage post-conviction petitions, and thus does not apply to Kaczmarek's case. Here, Kaczmarek needed to only present a limited amount of detail to support his allegation of perjury, which he has done. *See Edwards*, 197 Ill.2d at 244.

To support his allegation of perjury, Kaczmarek attached four newspaper articles to his

petition. (C. 92-98) Each of these articles discusses civil lawsuits that had been filed against Pamela Fish alleging that she had misled juries and ignored evidence that could have exonerated defendants in several cases. The articles also discuss a report detailing many cases in which Fish had misrepresented the scientific significance of her findings and several cases where Fish had actually testified falsely. One of the articles reported that as a result of this report and the lawsuits, Fish's work had been questioned and she had been transferred to an administrative job within the Illinois State Police.

Contrary to the State's assertions, these articles raise a question about the reliability and truth of Fish's testimony in Kaczmarek's case. According to the articles, Fish either testified falsely or in a misleading manner in many cases, always to the detriment of the defendant. In this case, Fish testified that, based on her blood typing analysis and enzyme testing, Kaczmarek could not have been the contributor of the blood found on his pants and jacket, but that the blood found on the pants and jacket was consistent with Nielsen's blood. The results of Fish's DNA testing were inconclusive. As in the cases discussed in the newspaper articles, Fish's testimony was detrimental to the defendant. Thus, the newspaper articles support Kaczmarek's gist of a claim that Fish's testimony in his case was not truthful.

The State cites *LeCompte* to support its argument that "courts have not hesitated to summarily dismiss *pro se* petitions in other cases where defendants' perjury allegations have fallen short." (St Br. 32) *LeCompte* is a second stage post- conviction case, and the petition was therefore not summarily dismissed in that case, rather the petition was dismissed after the petitioner had counsel appointed and was given the opportunity to amend his petition. *LeCompte*, 38 Ill.App.3d at 515. In *LeCompte*, the defendant alleged that his father witnessed

the State instructing witnesses what answers to give during their testimony. *LeCompte*, 38 Ill.App.3d at 515. Based on this allegation, counsel was appointed to represent the defendant on his post-conviction petition. The petition was ultimately dismissed because the defendant was unable to provide specifics regarding when the coaching took place or which witnesses were involved. *LeCompte*, 38 Ill.App.3d at 516. Here, because Kaczmarek's petition was dismissed at the first stage, he has not yet had the opportunity to provide specifics regarding Fish's perjury in other cases and the possibility of her perjury in his case.

Similarly, in *Graham*, the court found the defendant's perjury claim to be insufficient to warrant an evidentiary hearing. *Graham*, 48 Ill.App.3d at 693. As in *LeCompte*, the court made this determination after the defendant had counsel appointed to represent him in the post-conviction proceedings, and he had been given the opportunity to amend his petition. *Graham*, 48 Ill.App.3d at 690. Thus, the burden to which the defendant in *Graham* was held to support his perjury allegation is inapplicable to this case.

*Coleman*, also relied on by the State, is equally inapplicable as it involved the dismissal of an amended post-conviction petition following the appointment of counsel. *Coleman*, 183 Ill.2d at 370.

The cases relied on by the State support Kaczmarek's argument that his petition should not have been summarily dismissed at the first stage of the post-conviction proceedings. As in the cases cited by the State, Kaczmarek should have an attorney appointed to represent him on his petition and be given the opportunity to amend his petition and to further support his contention of perjury. Kaczmarek's *pro se* petition, taken as true and liberally construed, contains the gist of a claim that Pamela Fish committed perjury at his trial. This contention is

-4-

supported by the newspaper articles highlighting the investigation into the propriety of Fish's testimony in other cases. The circuit court therefore erred in summarily dismissing Kaczmarek's petition.

The State's attempt to distinguish this case from *People v. Smith*, 352 Ill.App.3d 1095, 817 N.E.2d 982 (1st Dist. 2004), is unavailing. First, the State incorrectly asserts that the post-conviction petition in *Smith* was summarily dismissed for failing to state the gist of a constitutional claim. (St. Br. 35) The post-conviction petition in *Smith* was dismissed after counsel had been appointed and the defendant had been given the opportunity to amend his petition - thus *Smith* is a second stage post-conviction case. *Smith*, 352 Ill.App.3d at 1099.

Second, the court in *Smith* did not excuse the defendant's lack of supporting affidavits on the grounds that the State blocked defendant's attempt in the trial court to obtain supporting information, as the State suggests. (St. Br. 35) The court found that the documentation attached to the defendant's petition regarding the false testimony given by Fish in the *Willis* case sufficiently supported the defendant's allegation that Fish testified falsely in his case. *Smith*, 352 Ill.App.3d at 1109. Thus, the court found that evidence that Fish had given false testimony in another case was sufficient evidence warranting a hearing in *Smith*.

Third, as the State points out, in *Smith*, the trial court granted the State's motion to quash the defendant's request for certain documents, including the State's Attorney Office's entire file on the defendant, information regarding the SAO computer docketing system, and information concerning Pam Fish. *Smith*, 352 Ill.App.3d at 1106. The State goes on to argue, "In this case, defendant has no similar excuse. There had been no post-conviction defense motions for depositions or records, and the State never weighed in on this issue prior to this appeal." (St. Br.

-5-

36) Again, the State fails to acknowledge that this is a first stage post-conviction case. In *Smith*, the defendant requested the documents after the State filed its motion to dismiss the post-conviction. *Smith*, 352 Ill.App.3d at 1106. Because Kaczmarek's petition was summarily dismissed, it never reached the point where he would be subpoenaing such documentation or where the State would have an opportunity to file a motion to dismiss. Thus, the State's argument is without merit.

Fourth, the State argues that this case is unlike *Smith* because in this case, Kaczmarek had the blood independently tested. (St. Br. 36) However, as the State points out, for whatever reason, the test results from Cellmark Laboratories were inconclusive, and thus shed no light on the truth or falsity of Fish's testimony. The State also argues that because Kaczmarek's attorney met with Fish before the second trial, Kaczmarek is not missing the information that the defendant in *Smith* was seeking. (St. Br. 38-39) However, it is not clear from the record what defense counsel and Fish discussed, nor is it clear what documentation defense counsel received from Fish. Moreover, evidence of Fish's impropriety in other cases was not revealed until after Kaczmarek's second trial, and therefore defense counsel would not have been looking for possible perjury in her testimony.

Finally, the State argues that the court in *Smith* found it critical that Fish's results in that case were inconclusive, while the results in this case were not inconclusive. (St. Br. 39) To the contrary, Fish testified that she was not able to determine the type of GLO enzyme present in the samples taken from Kaczmarek's pants and jacket because she got "no reaction," which was the same testimony she gave in *Smith*. Moreover, the results from Fish's DNA testing were inconclusive based on the same reasoning that she gave in *Smith* - that the samples were too

degraded. Thus, Fish's testimony in this case is similar to the testimony she gave in *Smith*, and Kaczmarek should therefore be given the opportunity to amend his petition with the help of an appointed attorney.

As in *Smith*, this Court should reverse the dismissal of Kaczmarek's *pro se* post-conviction petition and remand for further post-conviction proceedings. Kaczmarek has alleged facts in his petition, unrebutted by the record and supported by documentation, that Pamela Fish gave perjured testimony that led to his conviction for first degree murder. This perjury by an agent of the State constitutes a due process violation and is therefore cognizable under the Act. Therefore, this Court must reverse the dismissal of Henry Kaczmarek's post-conviction petition and remand for further proceedings under the Post-Conviction Hearing Act.

II. **HENRY KACZMAREK'S *PRO SE* POST-CONVICTION PETITION PRESENTED THE GIST OF A CONSTITUTIONAL CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSELS FOR FAILING TO CHALLENGE THE ADMISSIBILITY OF THE STATE'S EXPERT WITNESSES' TESTIMONY REGARDING LUMINOL TESTING AND BLOOD SPLATTER EVIDENCE UNDER *FRYE V. UNITED STATES*. KACZMAREK'S PETITION THEREBY WARRANTS FURTHER PROCEEDINGS UNDER THE POST-CONVICTION HEARING ACT.**

Initially, the State argues that Henry Kaczmarek has waived this issue for failing to include it in his post-conviction petition. (St. Br. 41) However, in his *pro se* post-conviction petition, Kaczmarek alleged that the trial judge was biased against him as evidenced by the judge allowing the State's expert witnesses to testify as experts despite their credentials suggesting that

they were not in fact experts. (C. 84) Kaczmarek further alleged in his petition that his trial and appellate counsels were ineffective for failing to challenge these experts' testimonies at both the trial and appellate levels. (C. 84) Thus, this argument has not been waived.

The State also argues that this issue has been procedurally defaulted because it has already been addressed by this Court. (St. Br. 41-42) However, as the State points out, this issue was never substantively addressed in Kaczmarek's direct appeal, and therefore, this Court may address it at this time.

On the merits, the State argues that luminol testing is not new or novel, and there was no need, therefore, for defense counsel to request a *Frye* hearing regarding the luminol evidence. (St. Br. 44) The State argues that luminol testing is not new or novel because it was discovered in the 1930's. (St. Br. 45) However, when luminol testing was first discovered does not end the inquiry. As Kaczmarek pointed out in his opening brief, only two reported cases in Illinois mention the use of luminol testing, and neither of these cases address the admissibility of luminol testing. While luminol testing may have been used by forensic scientists since the 1930's, its reliability has gone unchallenged in Illinois jurisprudence, and in regard to its admissibility, it should be considered new and novel until such time as its reliability can be confirmed. Thus, defense counsel should have requested a *Frye* hearing to determine the admissibility of the luminol evidence.

The State also argues that luminol testing is generally accepted in the scientific community. However, several states do not allow the introduction of luminol test results without further confirmatory tests. *See State v. Fukusaku*, 85 Haw. 462, 946 P.2d 32 (1997); *Houston v. State*, 321 Ark. 598, 906 S.W.2d 286 (1995). In this case, no confirmatory tests were performed

on the luminol evidence.

The State also argues that blood splatter evidence is not new or novel. The State cites *People v. Erickson*, 89 Ill.App.3d 56, 411 N.E.2d 44 (2nd Dist. 1980), where impact splatter evidence was discussed in the context of a reasonable doubt argument. However, the court did not discuss the context in which the evidence was admitted or whether any challenges to the evidence were made. Thus, *Erickson* does not resolve the question as to whether blood splatter evidence is admissible in Illinois without a *Frye* hearing.

The State argues that the reliability of blood splatter evidence was confirmed in *People v. Knox*, 121 Ill.App.3d 579, 459 N.E.2d 1077 (3rd Dist. 1984). (St. Br. 49) However, the court in *Knox* did not conduct a *Frye* hearing regarding the evidence nor make any determination regarding the general acceptance of blood splatter evidence in the scientific community. As such, while citing to *Knox*, the court in *People v. Owens*, 155 Ill.App.3d 990, 508 N.E.2d 1088 (4th Dist. 1987) found that no Illinois cases had taken judicial notice of the reliability of blood splatter evidence.

The State argues, based on *Knox*' implicit determination that blood splatter evidence has been generally accepted in the scientific community, that a *Frye* hearing was not necessary in this case. (St. Br. 50) However, as stated above, no *Frye* hearing was conducted in *Knox*, and the *Owens* court did not find that the *Knox* court had made a finding of general acceptance. As such, general acceptance of blood splatter evidence has not been established in Illinois.

The State argues that trial and appellate counsels' decisions not to challenge the luminol and blood splatter evidence under *Frye* was a strategic decision, and therefore they were not ineffective. (St. Br. 52) Strategic decisions must still be reasonable in order to not be considered

ineffective. It is unreasonable for a defense counsel not to challenge damaging evidence when there is a basis for such a challenge. Defense counsel understood the significance of the luminol and blood splatter evidence, and that is why defense counsel attempted to present an expert witness to refute the evidence. However, defense counsel should have challenged the admissibility of the evidence outright under *Frye* as opposed to relying on an expert to refute it. Thus, defense counsel's decision not to challenge the evidence was not reasonable.

Kaczmarek's *pro se* post-conviction petition, alleging that his trial and appellate counsels were ineffective for failing to challenge the trial court's acquiescence to the testimonies of Rea and Englert, stated the gist of a meritorious constitutional claim of ineffective assistance of counsel. Because luminol testing and blood splatter analysis have not achieved general acceptance in Illinois, trial counsel should have demanded a *Frye* hearing before this evidence was admitted at Kaczmarek's trial, and having failed to do so, appellate counsel should have raised the issue of trial counsel's ineffectiveness on appeal. Rea's and Englert's testimonies regarding the luminol testing and blood splatter analysis were critical to the State's case against Kaczmarek, and Kaczmarek was thereby severely prejudiced by his counsels' ineffectiveness. Therefore, this Court must reverse the dismissal of Henry Kaczmarek's post-conviction petition and remand for further proceedings under the Post-Conviction Hearing Act.

## CONCLUSION

For the foregoing reasons, Henry Kaczmarek, Petitioner-Appellant, respectfully requests that this Court reverse the trial court's decision dismissing Henry's *pro se* petition for post-conviction relief, and remand this cause for the appointment of counsel and further proceedings pursuant to sections 122-4 through 122-6 of the Post-Conviction Hearing Act.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

SARAH CURRY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois  60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT