No.

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| **PEOPLE OF THE STATE OF ILLINOIS,** | ) | Petition for Leave to Appeal from the |
| | ) | Appellate Court of Illinois, First |
| Respondent-Appellee, | ) | District, No. 04-2401 |
| | ) | |
| | ) | There heard on Appeal from the |
| -vs- | ) | Circuit Court of Cook County, |
| | ) | Illinois, |
| | ) | No. 87 CR 6131. |
| **HENRY KACZMAREK,** | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Lon William Shultz, |
| | ) | Judge Presiding. |

**PETITION FOR LEAVE TO APPEAL**

MICHAEL J. PELLETIER
Deputy Defender

SARAH CURRY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

EXHIBIT M

No.

IN THE

SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Petition for Leave to Appeal from the |
| | ) | Appellate Court of Illinois, First District, |
| Respondent-Appellee, | ) | No. 04-2401 |
| | ) | |
| | ) | There heard on Appeal from the Circuit |
| -vs- | ) | Court of Cook County, Illinois, |
| | ) | No. 87 CR 6131. |
| | ) | |
| HENRY KACZMAREK, | ) | Honorable |
| | ) | Lon William Shultz, |
| Petitioner-Appellant. | ) | Judge Presiding. |

**PETITION FOR LEAVE TO APPEAL**

**PRAYER FOR LEAVE TO APPEAL**

Henry Kaczmarek, Petitioner-Appellant, hereby petitions this Court for leave to appeal, pursuant to Supreme Court Rules 315 and 612, from the judgment of the Appellate Court, First District, affirming his conviction for first degree murder and his sentence of natural life imprisonment.

-1-

## PROCEEDINGS BELOW

The appellate court affirmed the summary dismissal of Henry Kaczmarek's post-conviction petition on November 16, 2006. Mr. Kaczmarek filed a petition for rehearing on December 5, 2006. The Appellate Court denied the Petition for Rehearing on January 23, 2007. A copy of the appellate court's judgment and order denying rehearing are appended to this petition.

## COMPELLING REASONS FOR GRANTING REVIEW

The First District's decision in this case, holding that newspaper articles reporting that serologist Pamela Fish provided false testimony in numerous cases near the time she testified against Henry Kaczmarek are not sufficient support for a *pro se* post-conviction petition to withstand summary dismissal, conflicts with the Fourth District's decision in *People v. Ledbetter*, holding that newspaper articles reporting that a police officer who testified against the defendant was under investigation for corruption do satisfy the support requirement of Section 122-2 of the Post-Conviction Hearing Act.

Henry Kaczmarek's *pro se* post-conviction petition alleged that the State presented the perjured testimony of criminalist Pamela Fish in order to secure his conviction for first degree murder. Kaczmarek attached newspaper articles to his petition reporting that Fish had been transferred to an administrative job within the Illinois State Police crime lab after her work had been questioned in several high-profile rape cases, and that several civil suits had been filed against Fish claiming that Fish misled juries and ignored evidence that could have exonerated defendants. The articles described a report, authored by Edward T. Blake and Alan Keel, which had been filed in federal court accusing Fish of providing false testimony in nine cases, including one involving Billy Wardell and Donald Reynolds, who were wrongfully convicted of the 1986 rape of two University of Chicago students.

Kaczmarek's *pro se* petition was summarily dismissed at the first stage of post-conviction proceedings. The appellate court affirmed, finding that Kaczmarek had not complied with section 122-2 of the Post-Conviction Hearing Act which requires that the

-3-

petitioner attach "affidavits, records, or other evidence" supporting the allegations contained in the petition. The appellate court refused to rely on the information contained in the newspaper articles Kaczmarek attached to his petition, finding that Kaczmarek should have attached the actual reports discussed in these articles. This decision is in direct conflict with *People v. Ledbetter*, 342 Ill.App.3d 285, 794 N.E.2d 1067 (4th Dist. 2003), which held that newspaper articles constitute sufficient evidence to support the allegations in a post-conviction petition.

      This Court should grant review to resolve the conflict between the First and Fourth Districts. This Court should also grant review to clarify the standard to be applied in determining if a *pro se* post-conviction petitioner has satisfied the "support" requirement of section 122-2 of the Post-Conviction Hearing Act. This Court recently granted review in *People v. Clarence Delton*, 222 Ill.2d 582 (2006), to consider a similar issue regarding the level of support a *pro se* petitioner alleging ineffective assistance of counsel is required to provide in order to survive summary dismissal.

## STATEMENT OF FACTS

In the early morning hours of April 25, 1987, Millie Nielsen was killed in her apartment. Police arrested Henry Kaczmarek and he was subsequently charged with Ms. Nielsen's murder. (Second Trial C. 34-51)[1] Following a jury trial in 1989, at which serologist Pamela Fish testified, defendant was found guilty of murder and sentenced to natural life. (Second Trial C. 54)

On March 31, 1993, the appellate court reversed defendant's murder conviction and remanded for a new trial. *People v. Kaczmarek*, 243 Ill.App.3d 1067, 613 N.E.2d 1253 (1st Dist. 1993). Following a second jury trial, at which Pamela Fish testified, Kaczmarek was found guilty of murder and sentenced to natural-life imprisonment. (C. 152, 293) On December 27, 2000, the appellate court vacated defendant's sentence and remanded for resentencing. *People v. Kaczmarek*, 318 Ill.App.3d 340, 741 N.E.2d 1131 (1st Dist. 2000). This Court reversed the Appellate Court's decision regarding defendant's sentence, and affirmed the judgment of the trial court. *People v. Kaczmarek*, 207 Ill.2d 288, 798 N.E.2d 713 (2003).

On March 24, 2004, Kaczmarek filed a *pro se* petition for post-conviction relief. (C. 76) In his petition, among other things, Kaczmarek alleged that he was denied his right to due process where the State presented the perjured testimony of serologist

---

[1]The common law record containing Henry Kaczmarek's post-conviction petition and the report of proceedings pertaining thereto will be cited as (C. __) and (R. __). The record from Henry's first trial, Appellate Court No. 89-3182, will be cited to as (First Trial C. __) and (First Trial R. __). The record from Henry's second trial, Appellate Court No. 97-2557, will be cited to as (Second Trial C. __) and (Second Trial R. __).

Pamela Fish. (C. 76-104)

At the first trial, Fish was qualified as an expert in the field of serology. (First Trial R. 855) In order to conduct her testing, Fish received, among other things, Henry's jacket and jeans, and samples of both Kaczmarek's and Nielsen's blood. (First Trial R. 859-862) Fish made two cuttings from the knees of the jeans and cuttings from each arm panel of the jacket where she observed reddish-brown stains. (First Trial R. 856-858) Fish testified that Nielsen's blood was Type A, and Kaczmarek's blood was Type B. (First Trial R. 864)

Fish determined that the reddish brown stains that she found on Kaczmarek's jacket and pants were Type A human blood. (First Trial R. 864-865) Fish testified that she was also able to perform electrophoresis on the blood samples taken from Kaczmarek's jacket and pants, as well as on the known blood standards of Kaczmarek and Nielsen. (First Trial R. 870) Fish tested the samples for nine enzymes and hemoglobin. (First Trial R. 884) Fish was only able to get a reading on eight of the enzymes and hemoglobin. (First Trial R. 873) The samples from Kaczmarek's pants and jacket were too degraded to get a reading on the GLO enzyme. (First Trial R. 873) Of the enzymes she was able to test, the enzymes from the blood samples taken from Kaczmarek's pants and jacket matched the enzymes from Nielsen's blood. (First Trial R. 873-874) Also, of the enzymes she was able to test, all but one of the enzymes in Nielsen's and Kaczmarek's blood were identical. (First Trial R. 906)

Based on her testing, Fish concluded that the blood on Kaczmarek's jacket and pants was not his own blood. (First Trial R. 873) Fish testified that about eight in one thousand people would have the same blood type and enzyme types that Nielsen had. (First Trial R. 913)

At the second trial, Fish was qualified as an expert in the fields of electrophoresis, serology, and DNA testing. (Second Trial R. J133) Fish gave similar testimony at the second trial regarding her blood type testing and enzyme testing of the various samples that she received in this case. Her conclusions were the same as the conclusions that she presented at the first trial – that Kaczmarek could not have been the contributor of the blood found on his pants and jacket, but that the blood found on the jacket and pants was consistent with Nielsen's blood. (Second Trial R. J127-J154)

Fish testified that since Kaczmarek's first trial, the Chicago Police Department had converted to DNA testing. (Second trial J160) Fish attempted to conduct DNA testing on the remaining samples that she had in this case. (Second Trial R. J160) Fish made additional cuttings on the lower left leg of Kaczmarek's pants where she observed some very small stains. (Second Trial R. J162) Fish was able to extract a very small amount of human DNA from these samples, but was unable to conduct any further testing because the samples were too small and degraded, and because it is difficult to conduct DNA testing on samples taken from blue jeans. (Second trial R. J163) Fish tried to conduct DNA testing on the blood samples taken from Kaczmarek's jacket, but her results indicated a mixture of blood samples that were consistent and therefore uninterpretable. (Second Trial R. J163)

In support of his allegation, Kaczmarek attached four newspaper articles to his petition. (C. 92-98) The first article reports that Pam Fish had been transferred to an administrative job within the Illinois State Police crime lab in research and development where she would review proposed projects and help write grants. Nicole Ziegler Dizon, *Crime Lab Supervisor Transferred*, The State Journal Register, August 16, 2001. Fish had been the supervisor of the biochemistry division of the Illinois State Police crime lab

which handled DNA and trace evidence. *Id*. The article reported that this transfer came after Fish's work had been questioned in several high-profile rape cases, and that several civil suits had been filed against Fish claiming that Fish misled juries and ignored evidence that could have exonerated defendants. *Id*.

The second article describes a report[2], authored by Edward T. Blake and Alan Keel, which had been filed in federal court accusing Pam Fish of providing false testimony in nine cases, including one involving Billy Wardell and Donald Reynolds, who were wrongfully convicted of the 1986 rape of two University of Chicago students. Robert C. Herguth, *Report Slams '80s Police Lab*, Chicago Suntimes, January 14, 2001. The two men were later exonerated by DNA. *Id*. The report was filed as part of a civil lawsuit being brought by Wardell and Reynolds. *Id*. The report also stated that Fish gave contradictory and questionable testimony in the case of the four men convicted of the 1986 rape and murder of medical student Lori Roscetti on the West Side. *Id*. The article pointed out that Fish had first come under scrutiny when it was revealed that she failed to disclose that John Willis, who was wrongly convicted of rape, had a different blood type from the actual offender. *Id*.

The third article describes the report authored by Blake and Keel regarding Fish and another report authored by Dr. Howard Harris regarding the Chicago Police

---

[2]Kaczmarek's Motion to Supplement the Record on Appeal with the Blake and Keel report, which post-conviction appellate counsel was able to obtain after conducting an internet search to determine the whereabouts of Blake and Keel and then placing a long-distance telephone call to their office in California, was denied by the Appellate Court on September 30, 2005.

-8-

Department crime laboratory. Both of these reports were filed in federal court in connection with the civil suit filed by Billy Wardell and Donald Reynolds. Maurice Possley and Steve Mills, *Disorganization Typified Crime Lab, Report Says*, Chicago Tribune, January 15, 2001. The report pertaining to the Chicago Police Department crime lab concluded that the lab "'displayed serious deviations from established crime laboratory standards for care of crime laboratories in 1986.'" *Id*. The report pertaining to Fish alleged that she "falsely testified about the results of blood tests performed for the Reynolds and Wardell case, as well as the cases of seven other men." *Id*.

The final article also discusses the Blake and Keel report. Steve Mills and Maurice Possley, *State Crime Lab Fraud Charged*, Chicago Tribune, January 14, 2001. The article quotes the report as stating, "'In many of these cases, Ms. Fish misrepresented the scientific significance of her findings either directly or by omission. . . . The nature of these errors are such that a reasonable investigator, attorney or fact finder would be misled. . . . And always, she offered the opinion most damaging to the defendant.'" *Id*. According to the article, in the Willis case, Fish testified that her test results were inconclusive, but her lab notes later showed that the tests excluded Willis as a suspect. *Id*. In the cases of Larry and Calvin Ollins, who were accused of the rape and murder of Lori Roscetti, Fish's testimony helped to convict the brothers even though her tests ruled them out as having any link to the semen found in Roscetti, a fact that Fish failed to disclose to the jury. *Id*. In an interview, Blake told the Chicago Tribune that he was surprised that the disclosures in past cases had not generated investigation into all of Fish's cases. *Id*.

Kaczmarek's *pro se* post-conviction petition was summarily dismissed on June 14, 2004. (R. B11)

-9-

On appeal, Kaczmarek argued that the circuit court erred in summarily dismissing his post-conviction petition because it stated the gist of a constitutional claim that the State presented the perjured testimony of criminalist Pamela Fish in order to secure his conviction for first degree murder. The Appellate Court affirmed the summary dismissal of Kaczmarek's petition, finding that he failed to comply with Section 122-2 of the Post-Conviction Hearing Act by not supporting his allegations with the necessary affidavits, records or other evidence. *People v. Henry Kaczmarek*, No. 1-04-2401 (1st Dist. November 16, 2006), Order at 4.

# ARGUMENT

**This Court Should Grant Review To Resolve The Conflict Between The First District's Decision In This Case, Holding That Newspaper Articles Are Not Sufficient Support For A *Pro Se* Post-Conviction Petition To Withstand Summary Dismissal, And The Fourth District's Decision In *People v. Ledbetter*, Holding That Newspaper Articles Do Satisfy The Requirements Of Sections 122-2 Of The Post-Conviction Hearing Act. This Court Should Also Grant Review To Clarify The Type Of "Affidavits, Records Or Other Evidence" That Are Necessary To Satisfy The Requirements Of Section 122-2 And Survive Summary Dismissal.**

Henry Kaczmarek filed a *pro se* post-conviction petition alleging that the State presented the perjured testimony of criminalist Pamela Fish in order to secure his conviction for first degree murder. Kaczmarek attached newspaper articles to his petition reporting that Fish had been transferred to an administrative job within the Illinois State Police crime lab after her work had been questioned in several high-profile rape cases, and that several civil suits had been filed against Fish claiming that Fish misled juries and ignored evidence that could have exonerated defendants. The articles also cited two reports that had been filed in federal court in relation to the civil suits. One of these reports, authored by DNA expert Dr. Edward Blake and criminalist Alan Keel, concluded that in many of the cases where Fish testified, she misrepresented the scientific significance of her findings either directly or by omission, that the nature of these errors were such that a reasonable investigator, attorney or fact finder would be misled, and that she always offered the opinion most damaging to the defendant. The circuit court summarily dismissed Kaczmarek's *pro se* petition and the First District appellate court affirmed. Order at 5. The appellate court held that Kaczmarek had failed to comply with Section 122-2 of the Post-Conviction Hearing Act by attaching only newspaper articles to his petition, rather than the actual reports referred to in the articles.

-11-

Order at 4. Therefore, according to the appellate court, Kaczmarek's petition was properly dismissed under this Court's decision in *People v. Collins*, 202 Ill.2d 59, 782 195 (2002). Order at 4.

The First District's decision in this case is in direct conflict with the Fourth District's decision in *People v. Ledbetter*, 342 Ill.App.3d 285, 794 N.E.2d 1067 (4th Dist. 2003). In *Ledbetter*, the defendant filed a *pro se* post-conviction petition alleging that the police officer who testified that the defendant had confessed to him was under investigation for corruption at the time of his testimony and was eventually convicted of multiple felonies and fired. *Ledbetter*, 342 Ill.App.3d at 287. On appeal from the summary dismissal of the defendant's petition, the State argued that the petition was properly dismissed because it was not supported by any affidavit, record, or other evidence as is required by section 122-2 of the Post-Conviction Hearing Act. *Ledbetter*, 342 Ill.App.3d at 288. The Fourth District reversed the summary dismissal of the post-conviction petition and found that the newspaper article that the defendant attached to his petition, reporting that the police officer had been indicted on eight counts of official misconduct, was sufficient evidence supporting the allegations contained in the petition. *Ledbetter*, 342 Ill.App.3d at 288.

In *Collins*, this Court held that a *pro se* post-conviction petition that fails to include either affidavits, records, or other evidence supporting its claims or an explanation as to why such supporting evidence is lacking, is properly dismissed as frivolous and patently without merit. *Collins*, 202 Ill.2d at 69. This Court described the supporting evidence required to withstand summary dismissal as evidence which shows that the allegations are "capable of objective or independent corroboration." *Collins*, 202 Ill.2d at 67. Nowhere in *Collins* did this Court suggest that the supporting evidence

could not contain hearsay or must be of such a caliber that it would be admissible at a trial or hearing. Certainly newspaper articles detailing the investigation into a criminalist who has been shown to have given false testimony and describing reports that had been filed in federal court as part of civil suits being brought against the criminalist, show that Kaczmarek's allegations of perjury are capable of objective or independent corroboration. As that is all that is required to survive summary dismissal under *Collins*, the Fourth District's decision in *Ledbetter* is the more reasoned.

That *Ledbetter* is the more reasoned case is further supported by the rationale behind the appellate court's decision in this case. In affirming the summary dismissal of Kaczmarek's petition under *Collins*, the appellate court relied on its earlier decision in *People v. Smith*, 352 Ill.App.3d 1095, 817 N.E.2d 982 (1st Dist. 2004). In *Smith*, the defendant filed a post-conviction petition, with the aid of his appointed counsel, the law firm of Winston and Strawn, alleging that he had been denied his right to due process where the State presented the perjured testimony of Pamela Fish in order to secure his conviction for murder. *Smith*, 352 Ill.App.3d 1097. The defendant attached several newspaper articles to his petition detailing the same Blake and Keel report discussed in the articles provided by Kaczmarek, as well as a "Petition to Vacate Judgment" from the case of *People v. Willis*, No. 90 CR 23912. *Smith*, 352 Ill.App.3d at 1105. The defendant's petition was dismissed at the second stage of post-conviction proceedings. *Smith*, 352 Ill.App.3d at 1098. On appeal, the State argued that the post-conviction petition was properly dismissed because it was not sufficiently supported by affidavits or other evidence. *Smith*, 352 Ill.App.3d at 1105. The appellate court determined that it did not need to address the accuracy of the newspaper articles because the record did not reflect any explanation by the defendant as to why the actual Blake and Keel report was

not attached. *Smith*, 352 Ill.App.3d at 1111. The court did, however, find that the document filed in the *Willis* case, which was also attached to the petition, supported the allegation in the petition in compliance with section 122-2 and remanded the case for an evidentiary hearing on the petition. *Smith*, 352 Ill.App.3d at 1108.

In relying on *Smith* in affirming the circuit court's summary dismissal of Kaczmarek's post-conviction petition, the appellate court completely failed to acknowledge that *Smith* was a second stage post-conviction case. Whereas Smith had the law firm of Winston and Strawn assisting him in the preparation of his post-conviction petition, including investigation and the gathering of any necessary supporting documentation, Kaczmarek filed his petition *pro se* from the confines of a state penitentiary. Moreover, Smith was required to demonstrate a substantial showing of a constitutional violation, whereas Kaczmarek only needed to present the gist of a constitutional claim to survive summary dismissal. Thus the appellate court's reliance on *Smith* was misplaced. While newspapers may not be sufficient support to demonstrate a substantial showing of a constitutional violation at second stage post-conviction proceedings, certainly newspaper articles are sufficient support to demonstrate the gist of a constitutional claim made by an incarcerated *pro se* petitioner.

Aside from its brief comment in *Collins* that supporting evidence under section 122-2 is that which shows that the allegations contained in the post-conviction petition are capable of objective or independent corroboration, this Court has never provided a working standard for lower courts to apply in determining if the requirements of section 122-2 have been satisfied. As a result, lower courts are not applying *Collins* in a uniform manner and conflicts such as the one between this case and *Ledbetter* have arisen. As further support that this is an area of law that needs to be addressed by this

-14-

Court is this Court's decision to grant leave to appeal in *People v. Clarence Delton*, 222 Ill.2d 582 (2006). In *Delton*, this Court will address the issue of what evidence constitutes adequate "support" for a *pro se* allegation of ineffective assistance of counsel. Kaczmarek contends that this issue needs to be addressed in regard to all types of allegations made in post-conviction petitions.

In conclusion, this Court should grant leave to appeal in this case to resolve the direct conflict between the First District's decision in this case and the Fourth District's decision in *Ledbetter*. Furthermore, this Court should grant leave to appeal to clarify the standard that should be applied in determining if a *pro se* petitioner has met the support requirement outlined in section 122-2 of the Post-Conviction Hearing Act.

## CONCLUSION

Henry Kaczmarek, petitioner-appellant, respectfully requests that this Court grant leave to appeal.

Respectfully submitted,

MICHAEL J. PELLETIER
Deputy Defender

SARAH CURRY
Assistant Appellate Defender
Office of the State Appellate Defender
203 North LaSalle Street - 24th Floor
Chicago, Illinois 60601
(312) 814-5472

COUNSEL FOR PETITIONER-APPELLANT

# APPENDIX

**Appellate Court Decision**

**Order denying petition for rehearing**